Welcome to Richmond. We're looking forward to the arguments this morning and Mr. Crandall, you will lead us off whenever you're ready. May it please the court. My name is Adam Crandall. I represent the petitioner in this case, Mr. Gustavo Nardea. Today we're asking the court to vacate the Department of Homeland Security's February 26, 2016, order of deportation under 8 U.S.C. 1187 upon a determination, first, that substantial evidence does not support the existence of a waiver of Mr. Nardea's constitutionally protected right to due process in the form of a hearing before an immigration judge and removal proceedings. Second, that proof of mere entry under the visa waiver program alone is not de facto proof of the existence of that waiver. Third, that when, as here, the record is devoid of any actual signed executed waiver or evidence thereof, that Mr. Nardea has a constitutionally protected right to due process and a removal hearing in immigration proceedings. And finally, that the violation of Mr. Nardea's due process rights has caused him to suffer substantial prejudice. The facts of the case briefly summarized are that Mr. Nardea was arrested by Immigration and Customs Enforcement agents on February 26, 2016. On the same day, he was issued notice of intent to deport and an expedited order of deportation charging that he entered the country September 30, 2001 pursuant to the visa waiver program and thereafter remained in the United States. The notice of intent in the record before the court indicates that, or alleges rather, that Mr. Nardea executed form I-791, which the notice presumes is a waiver of his rights to challenge his deportability in removal proceedings. Well, help me out. That form is divided in half. The bottom half, your client keeps, the top half, the immigration people keep. They say they put it in a data bank. But in order to get that bottom half, surely he had to sign the top half. Well, your Honor, the form that your Honor is referencing is actually the I-94W form. The form that the Department of Homeland Security references, and the only reference to any waiver in the record before the court, is form I-791. And there's no evidence before the court as to how that form, the form and contents of that particular form. So what's the difference between the two forms? That's a good question, your Honor. And it's not clear before the record, before this court, what the difference is. And it goes to the petitioner's argument, our argument, that substantial evidence does not support the existence of the waiver. That, in fact, there's a discrepancy or a conflict in the record before the court. Well, I guess what I'm asking is, does the statute or the regulatory scheme contemplate the completion of both forms as a prerequisite to entry? It does, your Honor. Under the I-94W scheme, it does, the statute does presume that. So why shouldn't we also presume that? Well, because that's a presumption that the Second Circuit in the Galuzzo case and the Eleventh Circuit in the Mocarum case both dealt with. And we're asking the court today to follow those decisions in those circuits in not presuming that the existence of a waiver in the absence of actual physical evidence, that his entry under the Visa Waiver Program alone doesn't create that presumption. But that's a precondition of admission, isn't it? So it is under the statute and assuming that every admission under the Visa Waiver Program is regular. And, again, that's where the petitioner would argue that. We would have to assume that some rogue Customs Border Patrol agent decided to give this guy a pass? Not necessarily that, your Honor, but we could presume any form of irregularity. And, in fact, the scheme under which Mr. Nordea. You want us to presume an irregularity? Well, your Honor, the scheme under which Mr. Nordea entered, in fact, was changed because of irregularities in the entry procedures, because of threats to national security and the administrative burden of this signed paper form. But you want us to presume an irregularity? No, your Honor, not necessarily presume. It's different, of course, than acknowledging it may occur. I understood you say you wanted us to presume it. No, your Honor, and I apologize if that was how it sounded. We wouldn't want the court to presume an irregularity, but to acknowledge that it is entirely possible that an irregularity could have arisen. I apologize for that. That's all right. And so on this issue of substantial evidence, the record contains no actual waiver, and the parties wouldn't dispute that. The record contains no admissions, concessions, or stipulations on the part of Mr. Nordea as to the existence of a waiver or as to ever having signed a waiver. And this is where this case is distinguishable from the Bradley case in the Third Circuit that the government relies upon. In that case, the petitioner did acknowledge and admit to having signed a form, having signed a waiver when he entered the country. There's no such admission in the record here. The only reference to a waiver, as I indicated, is this form I-791, which apparently wasn't even the correct form, the correct waiver being used at the time of Mr. Nordea's entry. So without direct evidence of Mr. Nordea having waived his rights, the government asks the court to rely upon a presumption. This is what the Eleventh Circuit in the Mulcarham case referred to as the entry ergo waiver argument. And I think the Eleventh Circuit properly, followed by the Second Circuit in a published decision in the Galuzzo case, were not willing to make that presumption that, as the Second Circuit said, the court would not presume away an evidentiary problem that was the government's own making. That, we believe, is the proper position to take in this case, especially in light of the countervailing presumption that the Second Circuit relies on there. And that's the presumption that actually cuts in favor of the petitioner in this case, where courts will generally indulge every reasonable presumption against waiver of a fundamental constitutional right. This court has – Well, but that assumes, I guess, at least in my mind, that assumes that the petitioner or anybody has a right to reject a waiver or avoid a waiver. But there's no right to reject or avoid a waiver in this context. It's a precondition of admission into this country, at least it was back then, I assume it is still now, that a petitioner necessarily must waive his rights in order to be admitted. So the petitioner has no choice. Does that make a difference? Whether he has a choice, it doesn't follow, as I stated earlier, that every admission is regular. Well, my point is that this indulgence against a presumption of waiver suggests that somehow the person waiving has a right to avoid a waiver, and that's not the case here. That's not the case, Your Honor. You're correct. Had Mr. Nardella refused to sign the waiver, he would have been turned away. And so it's not – Also, isn't this passport stamp as to the manner in which he's in the country? It is, Your Honor. And we are conceding or can concede that he entered under the Visa Waiver Program. The issue, then, is whether the waiver necessarily follows from that in this case. And our position is that the stamp itself, the I-94W, is not substantial evidence of the existence of the waiver where the government cannot present the waiver. And this record, the record that in this case is identical to the record in the Mulcarim case before the Eleventh Circuit and the Galuzzo case before the Second Circuit, in both of those cases, the record contained the bottom portion of the I-94W with a handwritten name of the petitioner and a stamp in the passport. And yet still in those cases, the courts were unwilling, rightfully so, to indulge this presumption that the government asked that the waiver necessarily followed the entry under the program. And further, in the absence of any waiver, Mr. Nardea unquestionably has a due process right to a removal hearing in the United States. This right stems from the early days of immigration law jurisdiction in finding that once a noncitizen gains admission to the United States in any status or even unlawfully, that once admission is gained, he or she begins to develop ties to the United States that go with residency that due process rights under the Fifth Amendment necessarily follow. Who has the burden of proof on the presumption issue? Respectfully, the government does, Your Honor. The government has to prove the existence of the waiver. And so if they're relying on a presumption, they carry the burden of proving that presumption. Mr. Nardea unquestionably has due process rights, and those due process rights were violated when he was ordered deported from the United States without a hearing and without evidence of an executed waiver of those rights in the record. And what follows from that necessarily is the issue of prejudice. Prejudice in this case vests at the moment of the due process violation, which in this case is not when he entered the United States. No, we're not claiming that Mr. Nardea's rights were violated at entry. Rather, his rights were violated on the moment that he was ordered deported by the Department of Homeland Security without an opportunity to appear in removal proceedings and without substantial evidence or direct evidence that he had waived that right. Viewed through this lens, prejudice necessarily follows in that all the rights that come along that Congress has determined are due to individuals like Mr. Nardea who are present in the United States were gone. He was not afforded those rights, including the right to be heard in immigration court, the right to present evidence, to examine evidence, to cross-examine witnesses, and importantly, to present any claims that he has to or may have to remain in the United States, which in this case, as we indicate in the brief, would be an application for cancellation of removal under 8 U.S.C. 229B. That's an application he can only make in removal proceedings before an immigration judge. That the entirety of those proceedings, including any appellate rights and post-order rights, the entirety of that proceeding, he was denied without direct evidence of having waived those rights. And so the last thing that we would put before the court is that a favorable decision for the petitioner in this case is necessarily a very limited holding. And so any concerns that the court has about opening the floodgates to litigation on this issue are not present. And that's because the scheme changed after the terrorist attacks of September 11th. This very scheme changed. It's now an automated application system that includes within that application the waiver of rights is automatic, and it's electronic, and it's memorialized in that electronic application process. And so a finding or a determination in favor of the petitioner in this case is necessarily limited because the process under which he entered is no longer even in place. Is that any indication that this corrective action, which I guess you say was a result of the 9-11 attacks, post-9-11, is that any indication of Congress's true intent? True intent? I'm sorry, Your Honor. Any indication that Congress really intended this entry-ergo waiver? I don't believe that it's necessarily evidence of Congress's intent, entry-ergo waiver. I think it is indication that Congress recognized that there were irregularities in the prior system that were allowing certain people through that maybe shouldn't come through, that were creating an administrative and bureaucratic backlog and problem at the ports of entry. And this is referenced. So I think it's more of an indication of that and recognizing that the waiver need be better memorialized going forward, that because the rights are so fundamental that the necessity of the waiver becomes part of this automatic prescreening process as opposed to the process when Mr. Nardaeya arrived, which was essentially arrive at the airport, show your passport, and that was it. So, again, because of the change in the law, a holding in favor of Mr. Nardaeya in this case would necessarily be limited. So, in conclusion, we'd ask the Court to vacate the order of deportation, find that Mr. Nardaeya's due process rights were denied when he was denied a hearing and removal proceedings, that the government has failed to meet its burden of proving that Mr. Nardaeya waived any right to such a hearing, and the Court should not indulge the government's presumption of a waiver and should instead indulge the reasonable presumption against waiver of Mr. Nardaeya's fundamental constitutional due process rights. Thank you. Thank you, Mr. Crandall. Let's hear from the government. Good morning, Your Honors. May it please the Court, my name is David Shore. I represent the Attorney General of the United States. In this case, the Department of Homeland Security determined that the petitioner, Mr. Nardaeya, was admitted to the United States through the Visa Waiver Program and ordered him removed. The issues before this Court are whether substantial evidence supports DHS's determination that Mr. Nardaeya is subject to removal due to his unauthorized presence and whether he remains bound by the limited and temporary terms of his admission. As to the first matter, the distinct issue of his removability, that issue is not truly contested. He concedes in his brief, he concedes just now for that matter, beyond what the brief says, that he was admitted through the Visa Waiver Program. In his brief, he acknowledges that he has no status in the United States, and that's consistent with the Department of Homeland Security's finding that he's present in violation of law under 8 U.S.C. 1227A1B. And that's the basis of removability, and that's uncontested. As to the separate issue of his status as a VWP entrant, substantial evidence also supports the finding that he was admitted under the Visa Waiver Program, again, which he now concedes. The record in this case, of course, includes his passport. There's no visa in his passport. There's a stamp in lieu of a visa in the place where a visa would appear, confirming September 30, 2001 admission under the non-immigrant designation WT, Visa Waiver Tourist, admitted for 90 days under Section 217 of the INA, which is the Visa Waiver Program. This admission record is not only consistent with a Visa Waiver entrant, it is solely consistent with a Visa Waiver Program entrant. And we have the portion of Form I-94W only used for Visa Waiver applicants, containing the same stamps and his name and date of birth. And so all of this is substantial evidence from which DHS could say, you are a Visa Waiver entrant and you're bound by the strictures of the Visa Waiver Program. He alleges no infirmity in that admission record or any specific infirmity in his admission whatsoever. Now, as to the reference in the Notice of Intent form to the predecessor to the I-94W, which is, I think, Form I-791. Well, the Federal Register describes that form as containing the same waiver. It's the predecessor to the I-94W. Any citation to that form is wholly harmless. Where we know that there was an I-94W used at Mr. Nardia's admission because we have a portion of that in the record. Mr. O'Rourke, let me ask you this question. If you had found the I-94W and it had not been signed by the petitioner, what's the result? I think that's a good question, Your Honor. That's why I asked it. I'm not certain how the Department of Homeland Security might proceed in that case. But, of course, that gets – I'm sorry. Then I guess maybe I don't understand your position because I thought your position is Entry Ergo Waiver. So what does it matter that he didn't sign it? If the form doesn't appear, the form doesn't exist, it seems to be equivalent to that. So I don't want to speak for you, but what's your position? Well, if there is an unsigned – the difference there would be instead of presuming error, which is what his argument turns on, presuming that there is an unsigned waiver out there somewhere, or that there was an officer who admitted him without first collecting the waiver as required by law, assuming that that happened, that presumption is wholly unwarranted and flies in the face of the presumption of regularity. But if there was actual tangible evidence of some sort of error, then I think this could possibly be a different case, but that's not where we are. Well, in this class of people that Mr. Nardi affines himself in, and if we were to accept the presumption of regularity, in what scenario could an immigrant overcome that? Well, I think the example of a waiver, a blank waiver form in the record, but possibly. Any evidence, any indicia, you know, of an error or an irregularity could potentially rebut. The presumption of regularity is, of course, a rebuttable presumption, and it exists precisely for this reason. As an evidentiary presumption where there is a lack of direct contemporaneous evidence, we can rely on the presumption that officials have properly discharged their duties. And Mr. Nardi has suggested nothing to rebut that presumption. And it's also important to note that the presumption of regularity is not at odds or does not conflict with, certainly in this case, a presumption against a waiver of a constitutional right for two reasons. Well, first, the waiver under the Visa Waiver Program lacks a constitutional dimension. It's made by an initial applicant for admission at the border, at the threshold of entry, before any constitutional rights have vested. And second, the government's position is not that the court should presume a knowing involuntary waiver. What the court should presume under the presumption of regularity is compliance with the law. That is, that the inspecting officer accepted from Mr. Nardia the signed, the required and signed form I-94W. And that's wholly apart from the issue of was this, you know, substantively, was it knowing involuntary? Just that they accepted the required signed form. Do you agree, Mr. Schor, that it's the government's burden to make the requisite showing in this case? It's the government's burden to establish removability. And here we have substantial evidence that he is removable because we have a passport stamped good for, you know, that his entry was good for 90 days, and we're certainly well past that now. And we also have passport stamps that are solely consistent with a Visa Waiver Program entry. And from that, there is substantial evidence that he was a Visa Waiver Program entrant and that he's subject to removal. And from that, there's also – Where the evidence is lacking, at least from the petitioner's point of view, is the existence of the waiver. And so my question is, if it's the government's burden to prove that, then it seems like the government is alighting the burden by relying on this presumption, which, I mean, from the petitioner's point of view, it's almost impossible to prove for him, he, or she to present any evidence because they don't have access to the records. Well, this is the full, you know, existing record of the admission, what we have. Now, certainly in other cases, in other Visa Waiver Program cases, there's been some, at least, allegation of either why the waiver, you know, was infirm or some allegation, you know, potentially of, you know, oh, well, you know, there was never a signed waiver. We don't have anything like that here. We have a general denial through counsel. We don't have any counter, you know, competing narrative set forth by the petitioner. So there's no affidavit. No affidavit was tendered to DHS, you know, upon the issuance of the notice of intent and before it issued the removal order. So I think it's incorrect, Your Honor, to say that the presumption of regularity, you know, cannot be overcome when here, I think, there's no reason to overcome it. There's nothing presented to rebut it. But that's because nothing was presented. And in a case where something is presented, you know, perhaps there could be a basis to challenge the presumption. But here, there is no basis. And so his argument turns on, yes, I'm admitted under the Visa Waiver Program, and I enjoyed the benefits of entry under the program, didn't have to obtain a visa, but I'm not bound by the strictures of the program in that I'm still entitled to a removal proceeding. And so that requires the court to accept this completely unsupported idea that, oh, well, some error must have occurred at the time of his admission, which, again, is contrary to the presumption of regularity. And contrary to the Second Circuit's decision in Galuzzo, that result is not supported or mandated by any presumption against the existence of a waiver. Because, again, the government's reliance on the presumption of regularity is just that the inspecting officer, as required by statute and regulation, accepted the signed Form I-94-W. The Attorney General lacks the authority to waive the visa requirement that all visitors, you know, present a visa. The Attorney General lacks the authority to waive that requirement absent the signed waiver. And so Mr. Ardea asserts in his brief through counsel the conclusion that his waiver was also not knowing and voluntary. This is a separate issue as to whether or not the waiver exists. There's been absolutely no reason set forth why it was not knowing and voluntary, just in an effort to defeat it, that conclusion is stated. The government's position is that the petitioner must proffer more than that conclusion. And the government's position is that the knowing and voluntary standard, again, doesn't apply because this is not a constitutional waiver. And even assuming that the standard does apply, Mr. Ardea is unable to establish prejudice. As he indicated through counsel, he wishes to pursue a cancellation of removal application in a removal proceeding. That's a discretionary form of relief. There is no protected liberty interest in cancellation of removal. So there is no constitutional violation that can lie from not having the opportunity to present that. And in addition, again, even assuming that the knowing and voluntary standard applies, if Mr. Ardea fully informed would have declined to sign the waiver, he would have been, his admission would have been refused, he would have faced summary removal. And likewise, had he signed it while intending to violate it, he would be in the same predicament that he now finds himself in, subject to summary removal. So the claim of prejudice is essentially the speculative claim that he would have somehow been able to return to the United States, approve the same potential eligibility to apply for cancellation of removal, and pursue that in a removal proceeding. And that's a wholly speculative claim of prejudice, which is why his claim fails. And I also just want to note, in Bradley, the Third Circuit, where there was also a lack of direct physical evidence of the waiver, was at best skeptical of the claim that the waiver has to be proven by clear and convincing evidence, unlike the issue of removability. But in that case, Bradley did not admit that he was a visa waiver program entrant, as counsel has just acknowledged. He admitted that he signed a form upon his entry, and the court took that to say, okay, well, that's an admission that you're a visa waiver program entrant. And so because that entry necessarily required the waiver, the court doesn't ask for or, sorry, the government doesn't ask the court to indulge in any presumption beyond the regular presumption of regularity, where first, there is no constitutional waiver at stake, and second, the government is not asking the court to presume a knowing and voluntary waiver, but merely compliance with the law. That is, that the inspecting officer accepted the signed required form. And that necessarily leads to a presumption of a knowing and voluntary waiver, doesn't it? Perhaps, Your Honor. Not necessarily. I mean, again, there could be an instance where there is reason to question. There is something proffered by a petitioner, an affidavit, something, but there is some reason to question the knowledge and the voluntariness of the waiver. I believe it was in the Seventh Circuit's Bayeux decision where they talked about victims of human trafficking who could sign the form under duress. But there would be some proffer and some reason to say, okay, there is an infirmity here. We don't have that. We don't have any alleged error at his admission. He states now that the error in due process violation is that he wasn't accorded a removal hearing. Well, that can't be the due process violation because that result necessarily flows from the waiver in every VWP case. So there would have to be some underlying error that leads to that prejudice. And the only error counsel has identified is, well, the government hasn't coughed up the waiver in this case. But that's not to say that the waiver doesn't exist or that there's any infirmity in the waiver. So that whole analysis or argument about prejudice is completely backwards. Again, there would have to be some error at admission for there to be a due process violation. Mr. Crandall made the point at the end of his argument that this is kind of a one-off case, that the court need not worry about an avalanche of cases coming its way. What's your position on that? There are millions of entrants under the Visa Waiver Program. I don't have statistics that I can rattle off on how many people entered before the implementation of the electronic version of the program. But it would be a windfall to those individuals who are here unlawfully and to Mr. Nardia. They enjoyed the benefit of the bargain, but without bearing the cost, which is the waiver of a right to a proceeding. And it's that efficiency. I mean, that's been called the linchpin of the Visa Waiver Program, that because of the no-contest provision, that's why the program is able to function. That is, it permits for efficient travel to and from the United States without the need for immigration proceedings, burdening our immigration courts and the courts of appeals. And so the notion that the linchpin of the program was just ignored and there was an error in that regard, I mean, it flies in the face of the presumption of regularity. And it would be a windfall to potentially a large number of individuals, the more egregious violators who have been here since before 2000, I want to say 2007, when the electronic version of the program was instituted. Because Mr. Nardia alleges no waiver in his admission and because he identifies no invalidity in his waiver, he remains bound by the terms of his limited and temporary admission under the Visa Waiver Program. And for that reason, the Court should deny his petition for review. Thank you, Your Honors. Thank you, Mr. Schor. Mr. Crandall, you have some time remaining for reply. Thank you, Your Honor. Just briefly on the issue of the burden in this case, the government's position that there's a presumption of regularity has the natural effect of flipping the burden to the petitioner in this case, which is not what the law says. The government always bears the burden of establishing the portability by clearing convincing evidence. And by flipping the burden here, it assumes that every Visa Waiver Program entrant waived their rights, then the petitioner necessarily has the burden of proving that he didn't. But isn't that a function of the statute? But it's untenable in light of the law governing removal and deportation, that when the government attempts to deport somebody from the United States, it is the government's initial burden of proving that the person is here in violation of the law and the corresponding charges. So by creating that presumption the government's way, the petitioner's point is that it flips the burden in a way that's not tenable under the law. Thank you. That's all I have. Thank you very much. Thank you, Mr. Crandall. We'll come down and re-counsel and then go into the next.
judges: William B. Traxler Jr., Albert Diaz, Henry F. Floyd